UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **NATHANIEL RIDO** | **CIVIL DOCKET NO. 1:21-CV-00930** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **MARTIN W. JOHNSON** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

## MEMORANDUM RULING

Plaintiff, Nathaniel Rido ("Plaintiff"), filed this lawsuit on April 8, 2021, pursuant to this Court's diversity jurisdiction. [Doc. 1]. Plaintiff's Complaint asserts breach-of-contract claims against Defendant, Martin W. Johnson ("Defendant") stemming from a series of promissory notes between the two parties. [Doc. 1]; [Doc. 59-9]. Throughout the course of this litigation, Defendant has represented himself *pro se*. Before the Court is Plaintiff's MOTION FOR SUMMARY JUDGMENT ("the Motion"). [Doc. 59]. After careful consideration, and for the reasons set forth below, the Court GRANTS Plaintiff's Motion.

## BACKGROUND

### I. Facts

On April 30, 2015, Plaintiff loaned $125,000 to Journeyline, Inc. ("Journeyline"), a business operated in part by Defendant. [Doc. 59-9, p. 2]. The promissory note evidencing this loan (the "Original Note") provided that: (i) Journeyline would make monthly payments until the Original Note matured on October 30, 2016; and (ii) Defendant personally guaranteed repayment. *See id.*

However, when the debt matured on October 30, 2016, Journeyline was in default. Instead of suing for breach, on September 20, 2017, Plaintiff negotiated and executed a refinancing agreement ("the New Note") with Defendant directly. [Doc. 59-4]. The New Note provided that: (i) as a result of Journeyline's failure to pay its initial debt, Defendant owed Plaintiff a total balance of $159,500; (ii) Defendant would make monthly payments in a stipulated amount until the New Note matured; and (iii) the New Note would mature on May 30, 2018, at which time "the entire principal as well as any unpaid interest shall be due and payable in full."[1]  *Id.*, p. 1.

Defendant failed to make all required payments under the terms of the New Note. *See generally* [Doc. 59-10]. However, on September 5, 2019, William Belton ("Belton"), a business partner of Defendant, offered Plaintiff an ownership interest in an unrelated real estate development venture as a means of "[relieving] the financial pressure [Defendant] is facing . . . as quickly and best as possible." [Doc. 59-5]. After several weeks of bargaining, Plaintiff acquired a 2.5% interest in Opportunity Zone Fund Group ("OZFG"), a Louisiana limited liability company. [Doc. 59-7, p. 1]; [Doc. 59-13, p. 3].

In spite of this, the parties' relationship continued to sour, and Plaintiff filed suit on April 8, 2021.

---

[1] The New Note also granted Plaintiff a security interest in property situated in Bienville Parish, Louisiana, and provided that "[t]his agreement shall be interpreted by and subject to the laws of the State of Texas." [Doc. 59-4, pp. 2, 4].

## II. Procedural History

Plaintiff's Complaint seeks: (i) repayment of the New Note's principal sum in the amount of $159,500.00; (ii) contractual interest of $16,500.00; (iii) legal interest accruing from May 30, 2018, the New Note's maturity date; and (iv) "all costs and expenses of collection, including this suit, and reasonable attorneys' fees in enforcing the Note." [Doc. 1, p. 4].

As noted above, Defendant has proceeded in this matter *pro se*. Trial has been set and postponed twice to allow Defendant to secure representation. *See* [Doc. 53]; [Doc. 34]. Defendant has failed to obtain counsel.[2] Plaintiff filed the instant Motion on October 19, 2022. [Doc. 59-1]. Defendant has not filed an opposition. The Motion is now ripe for ruling.

## LAW & ANALYSIS

## I. Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings in conjunction with affidavits and documentary evidence, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)

---

[2] Defendant filed a Motion to Enroll Counsel on April 21, 2022, shortly before the second trial date. [Doc. 49-1]. However, after an opportunity to amend, Defendant's Motion was stricken as deficient and never re-filed. [Doc. 58].

("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). If the movant fails to meet this burden, a court must deny the moving party's motion for summary judgment. *Id.*

If the movant satisfies its burden, however, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Id.*

Although federal courts are customarily procedurally lenient toward *pro se* litigants, the fact that a litigant proceeds *pro se* does not alter the summary judgment standard. *See Davis v. Fernandez,* 798 F.3d 290, 293 (5th Cir. 2015) ("Of course, this is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do."). Additionally, a court may "accept as true the uncontradicted facts raised in the unopposed motion [for summary judgment]." *N. Mill Cap., LLC v. Texan Rentals & Lease Servs., LLC*, 2020 WL 6365547, at *1 (S.D. Tex. Sept. 14, 2020) (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir.

1988)). Even where summary judgment is unopposed, however, the moving party must still meet the burden described above; a court cannot grant a motion for summary judgment simply because the non-movant fails to file an opposition. *LeBlanc v. Allied Tr. Ins. Co.*, 2022 WL 4594328, at *2 (W.D. La. Sept. 29, 2022) (citing *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n. 3 (5th Cir. 1995)).

## II. Plaintiff's Breach-of-Contract Claim

The New Note contains a choice-of-law clause providing that "[t]his agreement shall be interpreted by and subject to the laws of the State of Texas." [Doc. 59-4, p. 4]. Defendant has not challenged the validity of the New Note's choice-of-law-clause. *See generally* [Doc. 10]; [Doc. 24]; [Doc. 25-1]. Texas law consequently governs the merits of Plaintiff's claim.

Under Texas law, to succeed breach-of-contract claim, Plaintiff must establish: (i) the existence of a valid contract; (ii) performance or tendered performance; (iii) that Defendant breached the agreement; and (iv) damages resulting from Defendant's breach. *Dixon v. Wells Fargo Bank, N.A. as Tr. for Pooling & Servicing Agreement Dated as of Apr. 1, 2004, Asset-backed Sec. Corp. Home Equity Loan Tr. 2004-HE2, Asset-backed Passthrough Certificates, Series 2004-HE2,* 2020 WL 10050726, at *3 (N.D. Tex. Jan. 29, 2020), *report and recommendation adopted,* 2020 WL 10050712 (N.D. Tex. Feb. 3, 2020).

Here, Plaintiff has submitted competent summary judgment evidence supporting each element of his claim. *See generally* [Doc. 10]; [Doc. 24]; [Doc. 25-1]; *see also* [Doc. 59-11, p. 5] (where, in his deposition, Defendant acknowledges that the

New Note constituted "the full agreement" between himself and Plaintiff); [Doc. 38, pp. 6–7] (oral argument transcript where Defendant recognizes the validity of the New Note and concedes Plaintiff's performance); *Dixon*, 2020 WL 100560726, at *3 ("A breach occurs when a party fails or refuses to do something he has promised to do."). Further, Defendant has failed to produce any evidence disputing the first, second, or fourth elements of Plaintiff's claim, and the record otherwise supports a ruling in favor of Plaintiff.³ Summary judgment is therefore appropriate as to Plaintiff's breach-of-contract claim.

---

³   Throughout his filings, deposition, and at oral argument, Defendant has insisted that Plaintiff "forgave the debt" evidenced by the New Note in exchange for ownership interest in OZFG. [Doc. 38, p. 6]; [Doc. 59-11, p. 5]; [Doc. 25-1, p. 1]. In support of this contention, Defendant points to an email from Will Belton to Plaintiff where Belton offers "2.5% ownership interest in OZFG in return for the forgiveness of [Defendant's] promissory note." [Doc. 59-5]. This is, however, the only email where any party refers to the OZFG transaction as affecting the underlying debt evidenced by the New Note. Subsequent emails between Belton and Plaintiff describe Plaintiff's interest in OZFG as merely another "*security interest* in [Defendant's] property or assets." [Doc. 59-7] (emphasis added); *see also* [Doc. 59-6] (where Belton describes a "telephone conversation regarding *restructure of the obligation* between [Plaintiff] and [Defendant].") (emphasis added). Although the parties apparently engaged in negotiations both in person and via phone, the ultimate terms of these negotiations are unclear. *See* [Doc. 59-6]; [Doc. 59-7].

These facts present two possibilities: (i) either the parties – Plaintiff, Defendant, and Belton – agreed that Plaintiff's interest in OZFG would serve only as additional security for Defendant's debt; or (ii) Plaintiff regarded the OZFG interest as additional security while Belton and Defendant considered the OZFG interest as an extinguishment of Defendant's debt. Neither possibility would change the result here. *See Dixon¸* 2020 WL 10050726, at *4 (meeting of the minds required for loan modification); *see also In re Gaudet,* 625 S.W.3d 887, 894 (Tex. App.—El Paso 2021, no pet.) ("[W]hile nothing precludes an email from being considered as a writing that would consummate a contract . . . 'when it is alleged that an e-mail amounts to a contract binding on the sender, the e-mail's context must be carefully examined to determine whether it truly evidences the grave intent to be legally bound.'") (citing *Copano Energy, LLC v. Bujnoch,* 593 S.W.3d 721, 728 (Tex. 2020)). Further, under Texas law, "an agreement materially altering a contract must satisfy the Statute of Frauds when the underlying contract was subject to the Statute of Frauds." *L. v. Ocwen Loan Servicing, L.L.C.,* 587 F. App'x 790, 794 (5th Cir. 2014). Here, Defendant's underlying obligation to Plaintiff was a product of the Original Note, where Plaintiff personally guaranteed the repayment of the loan made to Journeyline. *See* [Doc. 59-9, p. 2] (where

### III. Damages

#### A. Costs & Attorney's Fees

A party may only recover attorney's fees when authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006). Texas law provides that "[a] person may recover reasonable attorney's fees from an individual . . . in addition to the amount of a valid claim and costs, if the claim is for … an oral or written contract." *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8); *see also Smith v. Patrick W.Y. Tam Tr.,* 296 S.W.3d 545, 547 (Tex. 2009) ("If attorney's fees are proper under section 38.001(8), the trial court has no discretion to deny them."); *Tuttle v. Builes,* 572 S.W.3d 344, 361 (Tex. App.—Eastland 2019, no pet.) (considering breach-of-contract claims arising from two promissory notes and concluding that "the trial court abused its discretion when it declined to award Appellants any attorney's fees[.]"). Accordingly, Plaintiff is entitled to recover attorney's fees under Texas law.

---

Defendant personally guarantees the repayment of the Original Note); [Doc. 59-4, p. 1] (where the New Note explicitly references Defendant's personal guarantee). Defendant's personal guarantee of Journeyline's debt was clearly a "promise by one person to answer for the debt … of another person" and therefore subject to the Statute of Frauds. *See* Tex. Bus. & Com. Code Ann. § 26.01(b)(2); *see also 84 Lumber Co., L.P. v. Powers,* 393 S.W.3d 299, 304–05 (Tex. App. 2012) (considering similar facts and concluding that a corporate officer was "liable for the credit his company received by means of his personal guarantee of [the] company's debts."). Texas law thus required that the Original Note be in writing, which necessarily means that any oral agreement between the parties could not modify – and therefore could not forgive – the debt created by the Original Note and modified by the New Note. *See Milton v. U.S. Bank Nat. Ass'n,* 508 Fed. Appx. 326, 328–29 (5th Cir. 2013) (applying the same principal to agreements to delay foreclosure). All told, the proffered email is insufficient as a matter of law to evidence a meeting of the minds as to modification of the New Note.

### B. Prejudgment Interest

State law governs prejudgment interest in diversity cases. *See, e.g., Garcia v. Maxim Commercial Capital, LLC*, 2017 WL 4868232, at *7 (S.D. Tex. Oct. 27, 2017); *Joy Pipe, USA, L.P. v. ISMT Ltd.,* 703 Fed. Appx. 253, 258–59 (5th Cir. 2017). Under Texas law, "[p]rejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Joy Pipe*, 703 Fed. Appx. at 257. A court may award prejudgment interest pursuant to either: (i) an enabling statute; or (ii) general principles of equity. *Id.* Here, although there is no statutory basis justifying the imposition of prejudgment interest, equitable prejudgment interest "is available as a matter of course, absent exceptional circumstances."[4] *Matter of Okedokun*, 968 F.3d 378, 392 (5th Cir. 2020). Indeed, Fifth Circuit jurisprudence holds that "Texas law plainly requires an equitable award of prejudgment interest to a prevailing plaintiff" unless "exceptional circumstances" exist such that "the trial court cannot address through other means any equitable concerns that favor the defendant." *Joy Pipe,* 703 Fed. Appx. at 257–58. Defendant has not raised, nor has the Court found, "exceptional circumstances" that would justify a denial of prejudgment interest in this case.

In Texas, prejudgment interest begins to accrue on the earlier of: (i) 180 days after the defendant received written notice of the claim; or (ii) the date upon which

---

[4] Statutory prejudgment interest exists only in wrongful death, personal injury, property damage, and condemnation cases. *Okedokun*, 968 F.3d at 392.

suit was filed. *First Commonwealth Bank v. Auto Res. of Texas LLC*, 2022 WL 16964754, at *5 (N.D. Tex. Nov. 16, 2022) (citing Tex. Fin. Code Ann. § 304.104). Additionally, the prejudgment interest rate is determined by the post-judgment interest rate applicable at the time of judgment, unless the applicable post-judgment interest rate is less than 5%. *Russell v. Hall*, 2020 WL 9848765, at *8 (N.D. Tex. Dec. 4, 2020), *report and recommendation adopted*, 2021 WL 2226490 (N.D. Tex. June 2, 2021) (citing Tex. Fin. Code § 304.103). The most recent post-judgment interest rate is 7.5%. *See* TEXAS OFFICE OF CONSUMER CREDIT COMMISSIONER, *Texas Credit Letter* (December 20, 2022), https://occc.texas.gov/publications/interest-rates (providing the post-judgment rate for the weeks of January 1, 2023, through January 31, 2023). Accordingly, Plaintiff is entitled to prejudgment interest at a rate of 7.5% annum calculated from April 8, 2021, the date upon which Plaintiff filed suit.

### C. Post-Judgment Interest

In diversity cases, federal law governs post-judgment interest. *Joy Pipe, USA, L.P. v. ISMT Ltd.*, 703 Fed. Appx. 253, 258 (5th Cir. 2017). Federal law provides that district courts "[must] award post-judgment interest on monetary judgments as a matter of course – they do not have discretion to deny it." *Id.* at 259. Post-judgment interest accrues on the "entire amount of the final judgment," including attorney's fees, costs, and prejudgment interest. *First Commonwealth*, 2022 WL 1694754, at *5 (citing *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991)).

Further, 28 U.S.C. § 1961(a) provides that:

> "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . [and] [s]uch interest shall be calculated from the date of the

entry of the judgment at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." This rate of interest compounds annually and must be computed daily until the date of payment. *Id.* at §1961(b). Plaintiff is entitled to post-judgment interest in accordance with this statute.

Accordingly, pre-judgment and post-judgment interest, as well as attorneys' fees shall be included in the Judgment.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff Nathaniel Rido's MOTION FOR SUMMARY JUDGMENT [Doc. 59] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff Nathaniel Rido is ordered to file within 14 days a proposed judgment including all amounts due as set forth in this Order along with necessary briefing and affidavits justifying the amounts due and owing.

THUS, DONE AND SIGNED in Chambers on this 12th day of January 2023.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE